**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| JOSIAH DAVIS, and EMILY DAVIS, | |
| Plaintiffs, | CIVIL ACTION NO.: 5:24-cv-15 |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**O R D E R**

Defendant filed a Motion to Exclude the Expert Report of Jim Gagliardi.  Doc. 143.

Plaintiffs filed a Response in opposition.  Doc. 158.  For the following reasons, the Court

**GRANTS in part** and **DENIES in part** Defendant's Motion to Exclude.  The Court **DENIES**

Defendant's Motion as to Mr. Gagliardi's expert report.  The Court also **DENIES** Defendant's

Motion as to the following testimony from Mr. Gagliardi's deposition, doc. 144-1: Page 26, line

17–Page 27, line 2.  The Court **GRANTS** the remainder of Defendant's Motion and

**EXCLUDES** the following testimony from Mr. Gagliardi's deposition, doc. 144-1: Page 25,

lines 20–25; Page 34, lines 9–22; Page 35, lines 13–24; Page 37, lines 8–25; Page 40, lines 18–

24; and Page 49, lines 11–20.[1]

**BACKGROUND**

Plaintiffs filed suit, alleging that they held a home insurance policy with Defendant.

Doc. 97.  Plaintiffs allege that a fire occurred at the home and that Defendant violated the policy

---

[1]    The deposition transcript is separately numbered by page by the court reporting agency.  I refer to the numbering system used by CM/ECF.

by refusing to conduct proper repairs.  Id.  Plaintiffs also allege that Defendant created a "PSP

Agreement" for a third-party contractor called ServPro to perform the repairs and that Defendant

breached that agreement.  Id. at 7.  Plaintiffs assert claims for breach of the policy, breach of

contract outside the policy, bad faith, breach of legal duty, and punitive damages.  Id. at 27–37.

Plaintiffs retained Jim Gagliardi as an expert.  Doc. 85-1.  Gagliardi represented in his

expert report that he is a licensed contractor who owns Simple Solutions Restoration, LLC.  He

explained that he possesses several certifications and is "the only AHEARN Asbestos Inspector

in SE Georgia along with ICRA certified."  Id. at 2.  Gagliardi further explained that he is

"certified in remediation of water and storm damage, fire losses, mold remediation, bio and

tra[u]ma clean up, [and] crawl space encapsulation."  Id.  Gagliardi opined in his report that

"asbestos remediation must be completed before the property can be cleaned and repaired."  Id.

at 3.  Gagliardi provided estimates for the cost of repair.  Id.  Gagliardi also opined about what

caused the fire and what steps should have been taken after the fire occurred.  Id. at 4–8.

Gagliardi also sat for deposition testimony.  Doc. 144-1.

### LEGAL STANDARD

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceutical,

Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in

determining the admissibility of expert testimony; however, any decision regarding admissibility

is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; Kumho Tire Co.

v. Carmichael, 526 U.S. 137, 141 (1999).  In this Circuit, courts routinely look to three elements

to determine if expert testimony is admissible under Daubert and Rule 702.  As the Eleventh

Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends
> to address; (2) the methodology by which the expert reaches his conclusions is

2

sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education."  Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1193 (11th Cir. 2010).  The expert need not have experience precisely mirroring the case at bar in order to be qualified.  Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate."  Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third element, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18-cv-148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)); Frazier, 387 F.3d at 1262–63. Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person." Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)). Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)). Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002). However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

4

**DISCUSSION**

Defendant filed this Motion, asking the Court to "exclude any testimony by Jim Gagliardi and the portion of Jim Gagliardi's expert report regarding the claim handling performed by State Farm in this matter." Doc. 143 at 1. Defendant argues that Gagliardi impermissibly provided expert opinions about claims handling, but Gagliardi "possesses absolutely no qualifications to render any opinion concerning" that subject. Id. at 7. Defendant also argues that Gagliardi's deposition testimony "concerning his interpretation of the contract entered into between ServPro and Plaintiffs and Gagliardi's testimony concerning damages for which State Farm should be liable" are inadmissible because an expert may not give a legal opinion. Id.

Plaintiffs filed a Response. Plaintiffs argue that Gagliardi's testimony "is not directed to claims handling requiring an insurance license" but instead focuses on "State Farm's performance under the Premier Service Program (PSP) Agreement within Mr. Gagliardi's areas of technical expertise, which is outside the insurance policy and does not require an insurance license." Doc. 158 at 2. Plaintiffs argue that Defendant's Motion lacks "any factual or legal foundation" and that Gagliardi made an "implicit contention that his credentials qualify him to testify concerning 'claims handling' related to his fields of technical expertise." Id. at 4. Plaintiffs also argue that, to the extent Gagliardi opines about claims handling, his opinions "should be admitted as permissible overlap." Id. at 5. Finally, Plaintiffs contend that Defendant's "proposed exclusion is overly broad" because claims handling covers topics that extend beyond matters requiring an insurance license. Id. at 7–8.

## I.    Gagliardi's Expert Report

I focus my attention first on Gagliardi's report. Defendant argues that "[t]he opinions given by Mr. Gagliardi in his report concerning State Farm's claim handling unquestionably do

5

not meet the <u>Daubert</u> standard." Doc. 143 at 7. Defendant asks the Court to exclude a "portion" of Gagliardi's report concerning claims handling. <u>Id.</u> at 1. But Defendant does not specifically identify any portion of Gagliardi's report that contains an opinion about claims handling. With exhibits, the report is 158 pages long. The bulk of Gagliardi's report seems to focus on his opinions on repair estimates for the property. Doc. 85-1 at 1–8.[2] While the proponent of expert testimony "always bears the burden to show that his expert is qualified to testify competently regarding the matters he intended to address," the Court will not examine Gagliardi's entire expert report to find the portions that Defendant might intend to challenge. <u>Frazier</u>, 387 F.3d at 1260. The Court **DENIES** the Motion as it applies to Gagliardi's expert report.

II.     **Deposition Testimony**

Defendant next provides seven passages from Gagliardi's expert witness deposition that it argues contain excludable testimony. Doc. 143 at 2–5.

In Passage One, Gagliardi was asked to clarify his opinion that there was "no basis for State Farm to have the internal arson investigation." He responded that "both fire and police had already cleared the scene and said that there was no foul play suspected." <u>Id.</u> at 2 (citing Doc. 144-1 at 25). In Passage Two, Gagliardi was asked about his opinion that "State Farm should have immediately initiated water remediation." Gagliardi stated that "equipment should have been at least sent to stabilize the property from secondary damages. Everybody knows that any property pre-1980, even if it's 1899, the proper steps for an asbestos inspection and asbestos testing are to be taken, and this didn't happen right off the bat." <u>Id.</u> at 2–3 (citing Doc. 144-1 at 26–27). In Passage Three, Gagliardi was asked about his opinion that work stopped on

---

[2]     Defendant did not provide Mr. Gagliardi's expert report as an attachment to the Motion. But Defendant previously filed a separate <u>Daubert</u> motion regarding Mr. Gagliardi and provided Gagliardi's expert report in that filing. Doc. 85-1.

Plaintiffs' home in "retaliation" because Plaintiffs hired a public adjuster. Doc. 144-1 at 34. Counsel asked: "[B]ecause any public adjuster was hired is a reason for the stop work order[?]" Doc. 143 at 3 (citing Doc. 144-1 at 34). Counsel appears to seek confirmation that Gagliardi believes that Defendant directed or encouraged ServPro to stop work on Plaintiffs' home because Plaintiffs hired a public adjuster. Gagliardi responded "yes," confirming his understanding of why work was stopped. In Passage Four, Gagliardi was asked if Defendant's adjuster "need[s] to consult with the Davises before he makes a decision." Gagliardi responded that, "[u]nder [the] PSP Agreement, State Farm assigns mitigation to the company in their rotation . . . . State Farm directs their contractors, they handle the work." Id. at 3–4 (citing Doc. 144-1 at 35). In Passage Five, Gagliardi opined that "[i]t is up to State Farm to get their PSP contractors in there to handle [repair] from start to finish . . . . That's all on State Farm." Id. at 4 (citing Doc. 144-1 at 37). In passage Six, Gagliardi testified that, once ServPro "decided to not [do the repairs], State Farm should have got one of the other PSP providers in the area and assigned it to them." Id. at 5 (citing Doc. 144-1 at 40). Finally, in Passage Seven, Gagliardi testified "because the claim was not handled properly, now we have mold in the entire house . . . . And unfortunately, because of the claim not being handled in a timely manner, the secondary damages are now State Farm's responsibility. That's why these numbers are so high." Id. at 5 (citing Doc. 144-1 at 49).

Defendant makes two primary arguments for exclusion. While not entirely clear from the briefing, it seems that Defendant argues that Gagliardi cannot provide the offered testimony because it concerns claims handling and Gagliardi is not qualified to opine about claims handling. Doc. 143 at 7. Defendant then argues that Gagliardi's testimony also constitutes improper contract interpretation and legal opinion. Id. Defendant argues an expert may not interpret a contract or give a legal opinion.

### A.      Gagliardi Is Not Qualified to Opine About Claims Handling

To ascertain whether an expert is properly qualified, the Court "must focus its inquiry on whether the expert has the requisite skill, experience, training, and education to offer the testimony he intends to introduce." Bryant v. BGHA, Inc., 9 F. Supp. 3d 1374, 1385 (M.D. Ga. 2014). Experts can, of course, "be qualified in various ways, including by knowledge, skill, training, or experience." United States SEC v. Spartan Sec. Grp., Ltd., 164 F.4th 1231, 1251 (11th Cir. 2026) (quoting Frazier, 387 F.3d at 1260–61). Mr. Gagliardi is a contractor who is certified in several different areas of home restoration. Doc. 85-1. He is potentially qualified to testify about those topics. Gagliardi has not, however, demonstrated that he has any knowledge, skill, training, or experience to offer opinions about claims handling. And each portion of deposition testimony that Defendant challenges concerns claims handling except for Passage Two (which concerns water remediation timelines). For example, in Passage Seven, Gagliardi opines that Defendant's failure to handle the claim properly caused some of Plaintiffs' damages. Gagliardi's experience and certifications as a contractor in no way demonstrate that he is qualified to make that opinion.

As noted above, the burden is on the party offering the expert to demonstrate that an expert opinion is admissible, and Plaintiffs' arguments are not convincing. Plaintiffs argue that "Mr. Gagliardi implicitly contends that he is also qualified to testify concerning claim handling related to his fields of technical expertise." Doc. 158 at 3. But an expert is either qualified or not. What Mr. Gagliardi implicitly contends is irrelevant, and it is the Court's responsibility to evaluate qualifications. From the record before the Court, Gagliardi has not shown sufficient qualifications to testify about claims handling. And Plaintiffs, as proponents of Gagliardi as a witness, have not made that showing either. Because Passages One, Three, Four, Five, Six, and

8

Seven of Gagliardi's deposition contain expert opinions for which Gagliardi is not qualified, those portions are inadmissible.

### B. Gagliardi May Not Offer Legal Opinions

Defendant next argues that Mr. Gagliardi's testimony on the PSP Agreement is inadmissible legal opinion. Doc. 143 at 7. Generally, courts view these sorts of arguments under the helpfulness prong of the Daubert standard. AIM Recycling of Fla., LLC v. Metals USA, Inc., Case No. 18-cv-60292, 2020 WL 209236 (S.D. Fla. Jan. 14, 2020) (analyzing potential legal conclusions as unhelpful to the jury). Interpretation of contracts is a "legal conclusion that experts may not opine on." Great Lakes Ins. Se. v. Williams, Case No. 1:23-CV-23556, 2025 WL 2144467, at *5 (S.D. Fla. Mar. 31, 2025) (collecting cases); see Rosen v. Protective Life Ins. Co., 817 F. Supp. 2d 1357 (N.D. Ga. 2011) (excluding proposed testimony that "seeks to displace the role of the Court by offering [the expert's] opinion on the scope of the obligations described by the unambiguous language of the [contract]"). The only time an expert may testify about contract terms is if the language in the contract is ambiguous. "Absent a finding of ambiguity, expert testimony regarding the interpretation of an insurance policy is clearly not admissible." Pa. Nat'l Mut. Cas. Ins. Co. v. All State Constr., Inc., 761 F. Supp. 2d 1306, 1311 (M.D. Ala. 2011). And even if a contract is ambiguous, expert testimony is only admissible in limited circumstances, such as to "clarify or define terms of art, science, or trade." LM Ins. Corp. v. Halleluyah Restoration, LLC, CV 422-011, 2023 WL 2401570, at *7 (S.D. Ga. Mar. 8, 2023) (quoting SEC v. Goldsworthy, Civ. Action No. 06-10012, 2008 WL 2943398, at *12 (D. Mass. Jan. 3, 2008)).

Only Passages Four, Five, and Six mention the PSP Agreement. In Passage Four, Gagliardi directly opined on what Defendant's obligations are under the PSP Agreement. In

Passage Five, he opined on the consequences of signing the PSP Agreement.  These two passages clearly involve interpretation of the PSP Agreement, which an expert witness cannot do absent a finding of ambiguity, and there is no allegation of ambiguity here.  In Passage Six, Gagliardi opined that, after ServPro stopped work on Plaintiffs' home, "State Farm should have gotten one of the other PSP providers in the area and assigned [the work] to them."  Doc. 84-1 at 40.  Here, Gagliardi gave an opinion on what Defendant should have done to mitigate risk to Plaintiffs' property in the context of testimony about the PSP program.  It is not clear whether that opinion comes from his interpretation of the PSP Agreement.  However, the burden in a Daubert motion always rests on the party offering expert testimony.  "The proponent of the expert testimony carries a substantial burden under Rule 702.  The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1107 (11th Cir. 2005) (citation and marks omitted).

Plaintiffs focus entirely on Defendant's qualifications argument in their Response and do not provide any argument at all regarding the helpfulness prong other than to argue that Gagliardi's testimony "does not rely on the skills of a claims adjuster or public adjuster with an insurance license."  Doc. 158 at 6.  Plaintiffs do not provide argument to rebut Defendant's contention that Gagliardi's deposition testimony constitutes legal opinion.  Because an expert legal opinion would not be helpful to the jury, the Court **GRANTS in part** Defendant's Motion and **EXCLUDES** Passages One, Three, Four, Five, Six, and Seven.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Exclude.  The Court **DENIES** Defendant's Motion as to Mr. Gagliardi's

10

expert report.  The Court also **DENIES** Defendant's Motion as to the following deposition testimony from Mr. Gagliardi's deposition, doc. 144-1: Page 26, line 17–Page 27, line 2.  The Court **GRANTS** the remainder of Defendant's Motion and **EXCLUDES** the following testimony from Mr. Gagliardi's deposition, doc. 144-1: Page 25, lines 20–25; Page 34, lines 9–22; Page 35, lines 13–24; Page 37, lines 8–25; Page 40, lines 18–24; and Page 49, lines 11–20.

   **SO ORDERED**, this 5th day of June, 2026.


_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA