# In the United States District Court for the Southern District of Georgia Waycross Division

JOSIAH DAVIS and EMILY DAVIS,

    Plaintiffs,

    v.

STATE FARM FIRE AND CASUALTY CO.,

    Defendant.

5:24-cv-15

## ORDER

This action is before the Court on three motions: (1) Defendant State Farm Fire and Casualty Company's (hereinafter "State Farm") motion to dismiss, dkt. no. 107, State Farm's motion for partial summary judgment, dkt. no. 111, and Plaintiffs Josiah and Emily Davis's motion for partial summary judgment, dkt. no. 114. The motions have been fully briefed and are ripe for review. Dkt. Nos. 107, 110, 111, 114, 125, 145, 146, 154, 155, 173, 178, 182, 183, 191, 192.

For the reasons set forth below, State Farm's motion for partial summary judgment, dkt. no. 111, is **GRANTED in part** and **DENIED in part**; Plaintiffs' motion for partial summary judgment, dkt. no. 114, is **DENIED**; and State Farm's motion to dismiss, dkt. no. 107, is **DENIED as moot**.

## BACKGROUND

### I.    Factual Background

This case arises out of a fire which occurred on March 19, 2023, at the home of Plaintiffs Josiah and Emily Davis, located at 68 King Street, Hoboken, Georgia ("the property"). Dkt. No. 145-1 ¶ 1; Dkt. No. 173[1] ¶ 1. At the time of the fire, Plaintiffs' dwelling and its contents were insured by State Farm under policy number 81-J4-N554-8 ("the policy"). Dkt. No. 173 ¶ 1; Dkt. No. 145-1 ¶ 2; Dkt. No. 111-3. The facts surrounding much of the case, including State Farm's handling of the claim, the scope of the damage wrought by the fire, State Farm's relationship with the initial contractor, and the timeline of a subsequent arson investigation, are all heavily disputed. See generally Dkt. Nos. 145-1, 173.

---

[1] Plaintiffs submitted a revised statement of undisputed material facts in response to State Farm's contention that Plaintiffs' earlier statement of undisputed material facts lacked sufficient citations to the record. Dkt. No. 155 at 1-2; Dkt. No. 155-1. State Farm responded to each paragraph of Plaintiffs' revised statement but objected to the Court's consideration of the revised statement as State Farm argued that the statement was untimely per Southern District of Georgia Local Rule 56.1. See Dkt. No. 173 at 1-2. Local Rule 56.1 requires a supporting statement of material facts "annexed to the motion." While Plaintiffs' revised statement of material facts was submitted non-contemporaneously with their brief in support of their motion for partial summary judgment, the Court declines to disregard Plaintiffs' revised statement, as it contains more detailed citations to the record and State Farm has substantively responded to each paragraph of the submitted statement. See dkt. no. 173; see also Cocke v. United States, No. 4:19-CV-169, 2026 WL 713991, at *1 n.1 (S.D. Ga. Mar. 13, 2026)

### A. The PSP Program

The day after the fire, on March 19, 2023, State Farm claim specialist Brian Roney held a call with Plaintiffs to discuss Plaintiffs' claim and State Farm's Premier Services Program ("the PSP"). Dkt. No. 173 ¶ 11-12. The PSP, now called the Select Service Home Repair Program, is a voluntary "customer choice program consisting of network service providers who manage national networks of mitigation, flooring, general contracting, and roofing contractors." See State Farm Select Service™ Home Repair Program, State Farm, https://www.statefarm.com/claims/home-and-property/select-service (Last Visited June 30, 2026); Dkt. No. 173 ¶ 6 (describing the PSP by reference to the publicly available website). The PSP is not part of, or described in, the policy. Id. 173 ¶ 7.

After the phone call, Mr. Roney sent Plaintiffs a letter confirming Plaintiffs' participation in the PSP ("the PSP letter"). Dkt. No. 115-3. The same day, Plaintiff Josiah Davis signed an "Authorization to Repair" form (hereinafter, "PSP Authorization to Repair"), which appears to authorize a contractor, ServPro, to "perform the repairs as indicated on [ServPro's] estimate." Dkt. No. 115-4. A third document, the "Authorization to Perform Services and Direction of Payment," was

---

(declining to disregard an untimely response to a motion under the local rules).

then signed by Plaintiff Josiah Davis and ServPro, authorizing State Farm to pay ServPro "solely and directly for that portion of the work covered by [Plaintiffs'] insurance policy," among other terms. Dkt. No. 115-5. These documents are also attached to Plaintiffs' second amended complaint and form the basis of some of Plaintiffs' claims. See dkt. no. 97. The documents are collectively referred to herein as "the PSP Documents."

After Plaintiffs signed the Authorization to Repair and Authorization to Perform Services, ServPro performed an "emergency board-up service," wherein ServPro boarded up the doors and wall sections on Plaintiffs' property which had been broken down by the fire department when it responded to the fire. Dkt. No. 173 ¶ 29. This emergency-board-up service is the only work ServPro ever performed on the property. Id. ¶ 30. The property remains unrepaired to this day, despite Plaintiffs' expectation that the property was to be cleaned and restored. Id. ¶¶ 30, 89.

Plaintiffs claim they understood that, under the PSP, "all the [Plaintiffs] were required to do was sign the PSP documents, pay their deductible, and approve the final construction to satisfy the tasks required of them to complete necessary cleaning and restoration of their property, [with] State Farm and ServPro handling the work." Id. ¶ 89. State Farm, however, disputes this characterization of the PSP as unsupported by the record. See id.

4

### B. The Origin and Cause Investigation

Mr. Roney's notes from March 20, 2023 (the day after the fire and before his inspection) record that there was "smoke damage throughout the house" and that he was requesting authority for an origin and cause ("O&C") investigation for subrogation purposes. Dkt. No. 173 ¶ 47. Mr. Roney, however, also created a file note recording his impression that the fire was an accidental direct physical loss and covered by the policy. Id. ¶ 53 (citing Dkt. No. 115-10). The file notes taken that day also state that the "kitchen will require a gut" and "certain other areas require clean only due to light soot and smoke." Id. ¶ 54. Mr. Roney sent a letter to Samsung, informing it that the fire may have been caused by the Samsung gas range in the kitchen. Id. ¶ 55.

The parties dispute exactly when and how Mr. Roney communicated to Plaintiffs that the home was the scene of an arson investigation, see id. ¶¶ 57–58, but on March 29, 2023, Mr. Roney created a file note reflecting that he had communicated to Plaintiff Josiah Davis that "the range and the home are currently evidence not to be tampered with" and that if Plaintiffs "did so without [State Farm's] consent, they could create a coverage issue due to the policy conditions requiring their cooperation and to make damage available for our inspection." Id. ¶ 59 (citing Dkt. No. 116-3). Then, on April 4, 2023, Mr. Roney sent an email to Plaintiffs informing them that ServPro would handle the shipment

of the Samsung Range and that "once the range is disconnected, protected, and set aside for pickup, you can have ServPro begin the cleanup." Id. ¶ 65; Dkt. No. 116-4.

Shortly after the fire, Plaintiffs hired a public adjuster, Shawn Markwardt. Dkt. No. 145-1 ¶ 5. On April 5, 2023, Mr. Markwardt sent an email to Mr. Roney notifying Mr. Roney of Mr. Markwardt's role as Plaintiffs' public adjuster. Dkt. No. 173 ¶ 66; Dkt. No. 116-5. The next day, April 6, 2023, Mr. Roney sent Mr. Markwardt a letter requesting that "no work be done on the home until our origin and cause [investigation] is completed and expect your cooperation in this matter as required by the policy conditions." Dkt. No. 173 ¶ 70; Dkt. No. 116-7. Plaintiffs and State Farm dispute whether this letter constituted a "stop work order" to Plaintiffs. See Dkt. No. 173 ¶¶ 70-75.

The fire was later characterized in the Origin and Cause investigation report as an "accidental loss." Dkt. No. 117-1 at 3-4. Further, a note from the Special Investigation Unit of State Farm dated May 24, 2023, recorded that the fire was "accidental per O&C." Dkt. No. 117-2 at 1.

On June 6, 2023, Mr. Roney sent a letter to Plaintiffs informing them that the earlier coverage questions had been resolved and that State Farm would extend coverage for the loss. Dkt. No. 117-4 at 1; Dkt. No. 173 ¶ 98. State Farm's investigation concluded that the fire was caused by an open flame on one of the

stove burners, though Plaintiff Emily Davis maintains that the burner was off when Plaintiffs left their home before the fire began. Dkt. No. 145-1 ¶ 3.

### C. State Farm's Communications with ServPro

While the parties dispute the level of contact that Mr. Roney had with ServPro, the parties appear to agree that Mr. Roney contacted ServPro on or before June 7, 2023. Dkt. No. 173 ¶¶ 100-02, 107-09. State Farm claims that Mr. Roney told ServPro to resume work, while Plaintiffs claim that Mr. Roney merely told ServPro to provide a "cleaning estimate." Id. Plaintiffs contacted ServPro on June 7, 2023, though it is disputed whether Plaintiffs requested ServPro to begin cleaning the home or requested a cleaning estimate. Id. ¶ 103. It is not clear from the parties' statements of material facts what happened between Plaintiffs, Mr. Roney, Mr. Markwardt, and ServPro in the months between June 7, 2023, and September 14, 2024. Id. ¶¶ 104-06, 111.

On September 27, 2023, Mr. Roney sent Plaintiffs another letter confirming their participation in the PSP with their selection of ServPro as the independent service provider. Dkt. No. 117-7. The parties dispute whether Plaintiffs or Mr. Roney was responsible for directing ServPro's work during this time. Dkt. No. 173 ¶ 120.

Then, on October 2, 2023, Mr. Roney sent Mr. Markwardt an email informing him that ServPro was declining to provide services

7

to Plaintiffs. Id. ¶ 123. In the email, Mr. Roney wrote: "It appears that you and your clients have proven too difficult to work with and they are no longer interested in assisting you." Id. ¶¶ 124-25; Dkt. No. 117-9 at 1. It is disputed whether ServPro contacted Plaintiffs about the termination of services directly. Dkt. No. 173 ¶ 129. Plaintiffs claim that Mr. Roney did not "insist that ServPro perform the services" or "go to bat" for Plaintiffs, a characterization that State Farm disputes. Id. ¶¶ 132-33. Mr. Roney did not refer Plaintiffs to any other contractors. Id. ¶ 143. Mr. Roney claims that Plaintiffs were no longer eligible for the PSP because Plaintiffs had a "claims professional" representing them. Dkt. No. 111-5 at 97:11-23.

### D. Plaintiffs' Written Demand

On November 15, 2023, almost eight months after the fire, former counsel for Plaintiffs delivered a demand letter to State Farm based on Mr. Markwardt's damage estimates, with the demand totaling $1,015,748.61. Dkt. No. 145-1 ¶¶ 41-43. The breakdown of Mr. Markwardt's estimate forming the basis for the total in Plaintiffs' demand letter is as follows:

| | |
|---|---|
| Coverage A (Dwelling): | $715,517.47 |
| | (Replacement Cost Value "RCV") |
| | $682,886.85 |
| | (Actual Cash Value "ACV") |
| Other Structures: | $1,931.12 (RCV & ACV) |

| | |
|---|---|
| Coverage B (Contents): | $212,342.73 (RCV) |
| Debris Removal: | $24,950.00 |
| Fire Department Charge: | $500.00 |
| Ordinance Upgrades: | $60,507.29 (RCV) |
| | $60,066.16 (ACV) |
| Total Replacement Cost Value: | $1,015,748.61 |
| Total Actual Cash Value: | $982,676.86 |

Id. ¶ 44. The only monetary figure from Mr. Markwardt's estimate which appeared in the demand letter is the replacement cost value total: $1,015,748.61. Dkt. No. 111-7 at 2.

State Farm then hired an engineering firm, NV 5, to perform a scope-of-damage analysis. Dkt. No. 145-1 ¶¶ 11-12; Dkt. No. 111-4 at 38:9-12 (State Farm representative deposition, "Meyers"). After an inspection, State Farm adjusted its final estimate to a total replacement cost value of $65,977.78, which is reflected in a "Summary of Coverage" document dated January 18, 2024. Dkt. No. 111-11 at 3; Dkt. No. 111-4 at 37:2-38:25; Dkt. No. 145-1 ¶ 13.

In Mr. Markwardt's contents inventory, the total loss for contents was calculated as $212,342.73, and the inventory did not include relevant information as to the items listed, such as age, condition, or other information allowing State Farm to determine the actual cash value of the claim. Dkt. No. 145-1 ¶¶ 14-15. Plaintiffs claim that Mr. Markwardt's estimate has since been updated. Id. Mr. Markwardt testified that he prepared the contents

9

inventory by walking through the interior of the home and dictating all the items of personal property present. Id. ¶ 24. Mr. Markwardt testified that he believed the personal property was damaged based on a conversation with an expert, who had allegedly told Mr. Markwardt that asbestos contamination had spread throughout the main level of the home. Id. ¶ 26. State Farm argues that because Mr. Markwardt did not include the age or condition of the personal property, State Farm could not calculate the actual cash value of the property from the inventory. Dkt. No. 111-1 at 3. State Farm claims that it has made payments for "all covered losses." Id. at 6.

## II.   Procedural Background

This case was originally filed in the Superior Court of Brantley County, Georgia, but was removed to this Court on March 8, 2024. Dkt. No. 1. The operative complaint, the second amended complaint ("SAC"), was filed on September 30, 2025. Dkt. No. 97. In the SAC, Plaintiffs assert five causes of action: Breach of Contract (Insurance Policy) (Count I); Bad Faith (Count II); Breach of Contract Outside the Policy (Count III); Breach of Legal Duty (Count IV); and Punitive Damages (Count V). Id. ¶¶ 89-126.

State Farm initially moved to dismiss Counts III-V of the SAC. Dkt. No. 107, Plaintiffs responded, dkt. no. 110, and State Farm replied, dkt. no. 125. While its motion to dismiss was pending, State Farm moved for partial summary judgment as to Count

I's measure of damages, as well as Counts II through V, dkt. no. 111, Plaintiffs responded, dkt. no. 145, and State Farm replied, dkt. no. 154. Plaintiffs independently moved for partial summary judgment as to Counts III and IV, dkt. no. 114, to which State Farm responded, dkt. no. 146, and Plaintiffs replied, dkt. no. 155.

After this briefing, the parties jointly filed a consent motion for leave to file supplemental briefing relating to Plaintiffs' motion for partial summary judgment in order to address deposition testimony which had recently been taken, dkt. no. 160, and the Court granted the motion. Plaintiffs submitted supplemental briefing, dkt. no. 178, to which State Farm responded, dkt. no. 182, and Plaintiffs replied, dkt. no. 183.

The Court held a hearing on the cross-motions for partial summary judgment on June 8, 2026. Dkt. No. 190. After the hearing, both State Farm and Plaintiffs submitted supplemental briefs in support of their respective motions for partial summary judgment. Dkt. No. 191; Dkt. No. 192.

## LEGAL STANDARD

Cross-motions for summary judgment do not require the Court to grant summary judgment to any party. United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1985) (quoting Bricklayers Int'l Union, Loc. 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)). Rather, summary judgment "shall" be granted if "the

11

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Additionally, if the moving party demonstrates that there is a failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). When ruling on cross-motions for summary judgment, the Court views the facts "in the light most favorable to the non-moving party on each motion." James River Ins. Co. v. Ultratec Special Effects Inc., 22 F.4th 1246, 1251 (11th Cir. 2022) (citing Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. This burden may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. See id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116–17.

Where the nonmovant attempts to carry this burden with nothing "more than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

I.    State Farm's Motion for Partial Summary Judgment

A.    Breach of Contract (Insurance Policy) (Count I)

### Measurement of Damages

Plaintiff first sues State Farm for breach of contract for

13

failure to pay Plaintiffs the full amount of all direct physical losses under the policy. Dkt. No. 97 ¶¶ 89-98. State Farm argues that it is entitled to summary judgment as to a subpart of Count I, that is, the measure of certain damages. Dkt. No. 111-1 at 12-13. State Farm contends that Plaintiffs' potential recovery for damage to the dwelling ("Coverage A") and personal property ("Coverage B") should be limited to the actual cash value of the damage because the policy requires repair or replacement of the damaged property within two years after the date of loss to recover the full replacement cost value, and there is no record evidence that Plaintiffs have repaired or replaced the damaged property in the more than two years since the fire. Id. at 12-13; Dkt. No. 111-3 at 26, 27 (relevant policy provisions); Dkt. No. 145-1 ¶¶ 33, 35. The relevant inquiry is to what extent, if at all, the terms of the policy dictate the measure of Plaintiffs' potential recovery for State Farm's alleged breach.

While the *amount* of damages is a question for the jury, the *measure* of damages in a breach of contract action is a matter of law. See Quigley v. Jones, 332 S.E.2d 7, 8 (Ga. Ct. App. 1985) aff'd, 334 S.E.2d 664 (Ga. 1985) (citing O.C.G.A. § 13-6-8) (other citations omitted). When interpreting an insurance policy, the Court looks to the text of the policy itself to determine its terms. Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016). "Where the contractual language is explicit and

14

unambiguous, 'the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'" Id. (quoting Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008)). Where the terms of the policy are ambiguous, the policy will be construed strictly against the drafter, who is often the insurer. Id. at 424-25 (citing O.C.G.A. § 13-2-2(5)).

In the relevant policy sections, State Farm agreed to pay the cost to repair or replace (either with a similar construction or common construction) the damaged part of the covered dwelling ("Coverage A") subject to the following relevant limitations:

(1) until actual repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, **you** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; . . .

Dkt. No. 111-3 at 26-27 (emphasis in original). For covered personal property ("Coverage B"), State Farm agreed to pay the

15

cost to repair or replace the covered property subject to similar

relevant limitations:

> (1)    until repair or replacement is completed, **we** will pay only the ***actual cash value*** of the damaged property;
>
> (2)    after repair or replacement is completed, **we** will pay the difference between the ***actual cash value*** and the cost ***you*** have actually and necessarily spent to repair or replace the property; and
>
> (3)    if property is not repaired or replaced within two years after the date of loss, we will pay only the ***actual cash value.***

Id. at 27 (emphasis in original). These provisions unambiguously

inform the insured that to recover the replacement cost value of

the covered dwelling or personal property beyond the actual cost

value, the insured must complete the repairs within two years of

the loss. Id.

Plaintiffs do not argue that this policy language is ambiguous

but instead argue that the doctrine of equitable estoppel should

bar State Farm from benefitting from these policy provisions under

the circumstances of this case. Dkt. No. 145 at 2-5. Plaintiffs

contend that State Farm, through its agent Mr. Roney, deceptively

delayed repairs to the home by misleading Plaintiffs into entering

into the alleged PSP agreement, delaying repairs to the home by

allegedly directing ServPro to not perform services for six months

after the fire, paying Plaintiffs insufficient funds to repair the

property, and engaging in the present litigation. Id. at 3-4.

Plaintiffs argue that due to this alleged deception, Plaintiffs'

16

home remains unrepaired and equity should bar State Farm from enforcing the two-year repair or replace requirement in the policy. Id. at 5.

In some cases, a party so misleads another into a prejudicial course of conduct that it would be unfair for the misleading party to hold that conduct against the other under the law; this is the doctrine of equitable estoppel. See Morgan v. Thomas, 448 F.2d 1356, 1365 (5th Cir. 1971) (quoting Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F.2d 824, 829-830 (9th Cir. 1957)). In Georgia, for equitable estoppel to arise "there shall generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury." O.C.G.A. § 24-14-29. To successfully establish equitable estoppel, the party asserting it is required to demonstrate the following elements:

> (1)  a false representation or concealment of facts;
>
> (2)  within the knowledge of the party making the one or concealing the other;
>
> (3)  the person affected thereby must be ignorant of the truth;
>
> (4)  the person seeking to influence the conduct of the other must act intentionally for that purpose; and
>
> (5)  the person complaining shall have been induced to act by reason of such conduct of the other.

17

Ga. Dermatologic Surgery Ctrs., P.C. v. Pharis, 800 S.E.2d 376, 378–79 (Ga. Ct. App. 2017) (citing Kim v. Park, 626 S.E.2d 232, 233 (Ga. Ct. App. 2006)). "Estoppels are not generally favored by the law, because the truth is excluded thereby." Collins v. Grafton, Inc., 435 S.E.2d 37, 39 (Ga. 1993) (quoting Crim v. Crawford, 47 Ga. 628, 628 (1873)). Additionally, the party asserting estoppel "must be free from fraud in the transaction, must have acted in good faith, and must have exercised reasonable diligence." Id. (citations omitted).

In this case, Plaintiffs have not put forth sufficient evidence to create a dispute of material fact as to whether State Farm should be estopped from benefiting from the two-year repair or replacement deadline under Coverage A and Coverage B of the policy. Plaintiffs cannot show that they were deceptively led to believe that State Farm would "handle the repairs" under the alleged PSP agreement, as the undisputed PSP documents unambiguously inform Plaintiffs (1) that "State Farm is not exercising its option under the insurance policy to repair or replace damaged property," dkt. no. 115-3 at 1, and (2) that ServPro was hired by Plaintiffs and not by State Farm, dkt. no. 115-4 at 1 ("I also understand they are independent contractors and/or independent service providers hired by me and not by the State Farm Insurance Companies."); dkt. no. 115-5 at 1 ("Customer agrees that Provider is working for the Customer and not Customer's

insurance company or any agent/adjuster."). Through any degree of "reasonable diligence," Plaintiffs would have understood that State Farm was not handling the repairs for the home. See Collins, 435 S.E.2d at 39 (noting that the party claiming estoppel must have exercised reasonable diligence).

Next, Plaintiffs argue that Mr. Roney engaged in deceptive conduct by communicating with ServPro to delay repairs to Plaintiffs' home through October 2, 2023, when Mr. Roney informed Mr. Markwardt by email that ServPro was declining to provide services to Plaintiffs. Dkt. No. 145 at 3–5. Even if Plaintiffs could show deceptive conduct on Mr. Roney's part, Plaintiffs have produced no evidence to show that such conduct induced Plaintiffs to delay—for over three years—making repairs to their home or replacing their damaged contents. See Ga. Dermatologic Surgery Ctrs., 800 S.E.2d at 378–79 (requiring that the party claiming estoppel "shall have been induced to act by reason of such conduct of the other"). The undisputed facts show that State Farm informed Plaintiffs on October 2, 2023 that Plaintiffs would need to find their own contractors to complete the repairs. Dkt. No. 117-9 at 1; Dkt. No. 173 ¶ 124 (Plaintiffs citing Dkt. No. 117-9). Plaintiffs have put forward no evidence to show why any alleged delay by ServPro prevented them from beginning any repair or replacement of their property *after* October 2, 2023.

19

Finally, Plaintiffs have put forth insufficient evidence to show they were prevented from making repairs or replacing contents due to State Farm's "low-ball" payment or the present litigation. Dkt. No. 145 at 4–5.[2] First, Plaintiffs have submitted no evidence to show State Farm's defense of the present suit or the allegedly low payments were intentionally deceptive actions which could have reasonably mislead Plaintiffs to follow a prejudicial course of conduct. See Ga. Dermatologic Surgery Ctrs., 800 S.E.2d at 378–79 (listing the elements of equitable estoppel). Nevertheless, Plaintiffs argue that allegedly low payments were not sufficient to complete the full repairs to the dwelling by the two-year deadline. Id. But this argument appears to be grounded in generalized notions of fairness rather than the elements of equitable estoppel. It is undisputed that State Farm paid Plaintiffs under State Farm's estimate of the damage. Dkt. No. 173

---

[2] Additionally, Plaintiffs put forward no evidence to show the amount State Farm *did* pay them or why such an amount prevented them from completing the necessary repairs. Plaintiffs' citation to these payments in their response to State Farm's motion for partial summary judgment does not contain an amount paid by State Farm at all. Compare Dkt. No. 145 at 4 (citing Dkt. No. 117-5 as "State Farm Payments based on final estimate") with Dkt. No. 117-5 at 1-2 (document appearing to contain State Farm file notes and email communications between Mr. Roney and Mr. Markwardt referencing State Farm's final estimate and summary of loss, but not containing the estimate or summary of loss). Instead, the only evidence which appears to be produced by either party as to State Farm's payments to Plaintiffs was put forth by State Farm in a document purporting to show payments to Plaintiffs in a total amount of $131,908.81 paid as of November 9, 2023. Dkt. No. 111-13 at 1.

¶¶ 4, 111-12. Plaintiffs' argument appears to be that they could not have completed the repairs to the dwelling in two years because they did not have sufficient funds to do so. See Dkt. No. 145 at 4-5. Fairness is not served, however, by ignoring the unambiguous terms of a contract Plaintiffs freely entered.

As established, supra, the policy clearly states that Plaintiffs will receive only the actual cash value for the loss until repair or replacement has been completed. Dkt. No. 111-3 at 26-27. Even in a scenario where State Farm and the insured agreed on the scope of damage, the policy still contemplates a gap between the actual cost value of the loss initially paid to the insured and the replacement cost value, the difference of which is paid only after repairs are completed. Id. To recover that difference, the repair or replacement must be completed within two years of the loss. Id. Therefore, the fact that the amount paid to Plaintiffs was insufficient to complete the repair is not, alone, evidence of prejudice, and the Court will not employ equitable principles to modify the clear terms of the contract where Plaintiffs have provided insufficient evidence to make equitable estoppel a dispute of material fact.

Importantly, State Farm's motion for partial summary judgment as to the measure of damages under Count I is narrow, applying to the measure of damages available, if any, solely for breach of the policy under Coverage A and Coverage B. Dkt. No. 111-1 at 13. The

21

policy contains additional coverages, including, *inter alia*, coverages for other structures, loss of use, and debris removal. See Dkt. No. 111-3 at 3. As State Farm did not move for summary judgment as to the measure of damages available under those provisions, the Court does not address them.

Therefore, because State Farm has shown that there is no genuine dispute of material fact on the issue of the measure of damages under Count I as to Coverage A and Coverage B within the policy, State Farm's motion for partial summary judgment is **GRANTED** as to Count I, and the measure of Plaintiffs' potential recovery for breach of the insurance policy under Coverage A, if any, will be limited to the actual cash value of the damage to Plaintiffs' dwelling, and any recovery under Coverage B is likewise limited to, if anything, the actual cash value of the damage to Plaintiffs' damaged contents.

### Consequential Damages

After the hearing on the cross motions for partial summary judgment, State Farm submitted briefing appearing to further argue that the policy prohibits Plaintiffs' recovery of consequential damages because both Georgia law and the policy impose a duty of mitigation on the insured. Dkt. No. 191 at 1–2 (citing O.C.G.A. § 13-6-5; Dkt. No. 111-3 at 28). In other words, State Farm argues that Plaintiffs failed to protect the property from further damage or make reasonable and necessary temporary repairs, as required by

22

the policy. Id. (citing dkt. no. 111-3 at 28, Section 1 condition 2.b.(1) of the policy, which provides Plaintiffs' "duties after loss," including "protect[ing] the property from further damage or loss").

While consequential damages may be excluded by a contract provision, the provision cited by State Farm does not explicitly do so. Cf. Mark Singleton Buick, Inc. v. Taylor, 391 S.E.2d 435, 437 (Ga. Ct. App. 1990) (permitting summary judgment on issue of exclusion of consequential damages where contract *expressly* stated the lessor shall not be liable "for any loss of profits or time, or other consequential damages"). Moreover, as mitigation of damages is an affirmative defense, State Farm bears the burden of establishing that no genuine issues of material fact exists as to whether Plaintiffs mitigated their damages. Shaheen & Co. v. Dickson, 427 S.E.2d 825, 826 (Ga. Ct. App. 1993) (citations omitted). As State Farm's supplemental brief does not contain any supporting citations to the record regarding mitigation, the Court finds that State Farm has not established an absence of dispute of material fact as to that issue. Therefore, to the extent State Farm moves for summary judgment on the issue of consequential damages, its motion is **DENIED**.

### B.   Bad Faith (Count II)

State Farm next argues that it is entitled to summary judgment as to Plaintiffs' claim for bad faith pursuant to O.C.G.A. § 33-

4-6 (Count II) because it had reasonable grounds to contest Plaintiffs' pre-suit demand. Dkt. No. 111-1 at 13–21. In response, Plaintiffs argue that summary judgment is inappropriate because they believe that there is a dispute of material fact as to the reasonableness of State Farm's refusal to pay Plaintiffs' written demand. Dkt. No. 145 at 5–13.

When a genuine conflict reaches the merits of a claim, an insurer is not liable for bad faith refusal to pay the claim under § 33-4-6, as a matter of law. Rice v. State Farm Fire & Cas. Co., 430 S.E.2d 75, 78 (Ga. Ct. App. 1993) ("[I]t is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim."). In evaluating whether there is a genuine conflict, "a court should carefully scrutinize any claim of a contest in facts to preclude the reliance by an insurance company on fanciful allegations of factual conflict to delay or avoid legitimate claims payment." Id. "Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." S. Fire & Cas. Ins. Co. v. Nw. Ga. Bank, 434 S.E.2d 729, 730-31 (Ga. Ct. App. 1993) (other citations omitted) (quoting Fortson v. Cotton States Mut. Ins. Co., 308 S.E.2d 382 (Ga. Ct. App. 1983)) (finding error when a lower court did not grant summary

24

judgment after defendant insurer had demonstrated that "it did not refuse payment on the policy for 'frivolous' or 'unfounded' reasons") However, where the reasonableness of the refusal to pay is a disputed issue of fact, some courts have found that the issue of bad faith under § 33-4-6 is properly reserved for the jury. See, e.g., Crazy Cuban, LLC v. AmGUARD Ins. Co., 437 F. Supp. 3d 1261, 1271–72 (N.D. Ga. 2020) (denying summary judgment on the plaintiff's § 33-4-6 claim when genuine issues of material fact remained regarding the reasonableness of the defendant insurer's denial of payment).

Here, State Farm has produced sufficient evidence to demonstrate that it had a reasonable basis to deny Plaintiffs' demand. It is undisputed that in response to Plaintiffs' demand letter, State Farm retained an engineering firm to perform a scope-of-damage analysis on the home, dkt. no. 145-1 ¶ 11, and that State Farm's final estimate, effectively denying Plaintiffs' demand, was based on the engineering firm's report, id. ¶¶ 12-13. An insurance company's denial of an insured's written demand based on a consultant's opinion is reasonable as a matter of law unless "the advice is patently wrong and the error was timely brought to the insurer's attention . . . or unless the advice is 'in the nature of mere pretext for an insurer's unwarranted prior decision [to deny the claim].'" Montgomery v. Travelers Home & Marine Ins. Co., 859 S.E.2d 130, 135 (Ga. Ct. App. 2021) (citations omitted)

25

(alteration in original) (quoting Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 511 n.6 (Ga. Ct. App. 2000)).

Plaintiffs have submitted no evidence that State Farm's denial of their demand was "mere pretext" or "patently wrong." Indeed, there is a dispute of material fact as to the actual cost to repair and replace the damage to Plaintiffs' property. Both parties cite competing experts on the scope and type of damage, including experts on mold and asbestos contamination. See Dkt. No. 111-1 at 3 (citing a deposition referencing State Farm's contracted NV 5 engineering report, dkt. no. 111-4 at 38:1-25); Dkt. No. 145 at 7-8 (citing Plaintiffs' expert as to repair and mediation costs, as well as Plaintiff Josiah Davis's declaration as to the scope of damages).

To argue that the reasonableness of State Farm's denial is a dispute of fact precluding summary judgment, Plaintiffs cite a non-binding Northern District of Georgia Case, Crazy Cuban, LLC v. AmGUARD Insurance Company. Dkt. No. 145 at 6-7 (citing Crazy Cuban, 437 F. Supp. 3d at 1271). The facts in that case, however, are distinguishable from those in this case. In Crazy Cuban, the defendant insurer did not provide evidence of a reasonable basis for denying the plaintiff's demand; instead, the record evidence showed that, in denying payment, the insurer "inexplicab[ly]" relied on the plaintiff's prior public adjuster whom the insurer knew to be terminated, and the insurer did not provide an

26

explanation as to why it had stopped responding to the plaintiff's emails. 437 F. Supp. 3d at 1271–72. As described, supra, State Farm has carried its burden at this stage as to the reasonableness of its denial. The standard under Georgia law is that bad faith does not exist as a matter of law when there is "*any* reasonable ground to contest the claim." Nw. Ga. Bank, 434 S.E.2d at 730 (emphasis added). The undisputed facts as to the basis for State Farm's denial of Plaintiffs' demand and the disputes of material fact as to the scope of damage require the Court to grant summary judgment for State Farm on Plaintiffs' bad faith claim. Therefore, State Farm's motion for partial summary judgment, dkt. no. 111, is **GRANTED** as to Count II.

### C.   Breach of Contract Outside the Policy (Count III)

State Farm next argues that it is entitled to summary judgment as to Plaintiffs' claim for breach of contract outside of the insurance policy (Count III) because, according to State Farm, none of the PSP documents, either independently or together, create a separate contract between State Farm and Plaintiffs. Dkt. No. 111-1 at 20–22; Dkt. No. 154 at 5–6. In response, and in their own motion for partial summary judgment, Plaintiffs argue that the PSP documents are confirmation of a verbal agreement reached by Mr. Roney and Plaintiffs, and, somewhat contradictorily, that the language of the three PSP documents (the PSP letter, dkt. no. 115-3, the Authorization to Repair, dkt. no. 115-4, and the

Authorization to Perform Services, dkt. no. 115-5) indicates that the documents should be construed as a single, integrated multi-document contract. Dkt. No. 145 at 13–17; Dkt. No. 114-1 at 5–8; Dkt. No. 183 at 4 ("The PSP Agreement is a three-party, three-part integrated contract."). Plaintiffs are wrong.

There are four essential elements to a valid contract under Georgia law: "(1) there must be parties able to contract; (2) consideration; (3) assent of the parties to the terms of the contract; and (4) a subject matter upon which the contract can operate." Mitchell v. Ga. Dep't of Cmty. Health, 635 S.E.2d 798, 805 (Ga. Ct. App. 2006) (citing O.C.G.A. § 13-3-1). "[A] written contract can consist of multiple documents." Bd. of Regents of Univ. Sys. of Ga. v. Tyson, 404 S.E.2d 557, 558–59 (Ga. 1991) (citations omitted). This rule, however, is subject to the requirement that "there is no conflict between the various parts." Jackson Elec. Membership Corp. v. Ga. Pub. Serv. Comm'n, 668 S.E.2d 867, 872 (Ga. Ct. App. 2008) (quoting Cassville-White Assoc. v. Bartow Assoc., 258 S.E.2d 175 (Ga. Ct. App. 1979)).

Once the Court determines whether a contract exists, the next step is to determine the agreement's terms, keeping in mind that "[t]he cardinal rule of contract construction is to ascertain the intention of the parties." Freeman Cap. Grp., LLC v. Drury, 887 S.E.2d 812, 816 (Ga. Ct. App. 2023) (quoting O.C.G.A. § 13-2-3) (alterations adopted). The Georgia Court of Appeals has described

28

contract interpretation as guided by three steps:

> First, the trial court must decide whether the language
> is clear and unambiguous. If it is, the court simply
> enforces the contract according to its clear terms; the
> contract alone is looked to for its meaning. Next, if
> the contract is ambiguous in some respect, the court
> must apply the rules of contract construction to resolve
> the ambiguity. Finally, if the ambiguity remains after
> applying the rules of construction, the issue of what
> the ambiguous language means and what the parties
> intended must be resolved by a jury.

Id. (quoting City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d

381, 389 (Ga. 2013)).

Here, the first document comprising the PSP documents is the

PSP letter. Dkt. No. 115-3. This is a letter from Mr. Roney, a

State Farm claims specialist, confirming Plaintiffs' participation

in the PSP. Id. at 1. The letter contains the following disclaimer:

> State Farm is not exercising its option under the
> insurance policy to repair or replace damaged property.
> Instead, State Farm will pay to repair the damaged
> building property covered by your policy, less your
> deductible, subject to your policy's terms and
> conditions. Any additional work performed at your
> request by your independent contractor or independent
> service provider(s) for repair or improvements not
> covered under your insurance policy will be your
> responsibility. You will also be responsible for any
> additional cost of upgraded materials used to complete
> covered repairs.

Id. at 1. The PSP letter next describes the following two PSP

documents:

> As we discussed earlier, your assigned independent
> contractor(s) and/or each independent service
> provider(s) you select will ask you to sign an
> Authorization To Repair form to begin the repair work.
> You will also receive an estimate for the repairs from

29

each assigned independent service provider and the general contractor. Once repairs have been completed to your satisfaction, each independent contractor will also ask you to sign an Authorization to Pay form, which will allow State Farm to pay them directly for the work they performed. The independent service provider(s) and your independent contractor(s) will warranty their workmanship labor on building or structure repairs for a five-year period.

Id. at 1–2. The letter is then followed by a signature block indicating that it was sent by Mr. Roney. Id. at 2. Plaintiffs contend that this is the "central document" in the alleged PSP agreement, as it references the other two documents. Dkt. No. 145 at 15.

The second document in the alleged PSP agreement is the Authorization to Repair. Dkt. No. 115-4. This document is on State Farm letterhead, is signed only by Plaintiff Josiah Davis, and contains the following language

I have agreed to use the State Farm Premier Service® Program. I understand the use of this program is voluntary and I have been offered the opportunity to choose any independent contractor and/or independent service provider(s) participating in the State Farm Premier Service Program. I also understand they are independent contractors and/or independent service providers hired by me and not by the State Farm Insurance Companies. I understand State Farm® is paying for the repairs to the property damage covered under my policy, subject to the deductible and the policy's terms and conditions, and that State Farm is not exercising its option under the insurance contract to repair or replace any part of the property damaged.

Id. The Authorization to Repair then notes that the insured has selected ServPro of Waycross, Hinesville & Douglas to perform the

30

repairs for the loss and is then followed by an acknowledgement that the deductible is payable to the authorized independent contractor, and that the insured is liable to the independent contractors for repairs or improvements made which are not covered by the policy. Id.

The final PSP Document is the Authorization to Perform Services and Direction of Payment. Dkt. No. 115-5. This document is on ServPro letterhead and is signed by Plaintiff Josiah Davis and a ServPro representative. Id. The document authorizes ServPro to perform cleaning and/or restoration services at Plaintiffs' property, authorizes State Farm to pay ServPro directly for work done covered by the insurance policy, and states that the deductible under the policy is payable to ServPro. Id. State Farm does not appear as a signatory on this document. Id.

According to Plaintiffs' briefing, the terms of the alleged PSP Agreement are as follows:

1. A requirement that State Farm pay Plaintiffs' insurance claim to ServPro based on the estimates provided by ServPro and not estimates prepared by State Farm. Dkt. No. 145 at 14, 17–18; Dkt. No. 114-1 at 8.

2. That State Farm and ServPro would work together to manage the services without significant involvement from Plaintiffs. Dkt. No. 145 at 15.

3. Plaintiffs were solely required to (1) sign the PSP documents, (2) pay their deductible, and (3) approve the final construction. Dkt. No. 114-1 at 5–6.

31

4. That Plaintiffs' claim would be handled entirely within the PSP. Dkt. No. 145 at 19; Dkt. No. 114-1 at 10-11.

See Dkt. No. 145 at 15-19; Dkt. No. 114-1 at 5-11.

### 1.    The terms of the PSP documents

To the extent Plaintiffs' claim for breach of contract outside the insurance policy (Count III) is based on a "three-part integrated contract," dkt. no. 183 at 4, that claim fails. First, even if the three documents could somehow be construed to create some form of a contract between State Farm and Plaintiffs, a reasonable jury could not find that the PSP documents contain the terms Plaintiffs allege. First, the PSP documents do not state that State Farm would pay ServPro based exclusively on ServPro's *estimate*; instead, the PSP documents state that ServPro would provide an estimate for repairs and that State Farm would pay ServPro *for the work performed*. See Dkt. No. 115-3 at 1. Additionally, the PSP letter explicitly states that the service providers under the PSP "are not authorized to answer questions or give opinions on whether damage is covered under your policy. Please direct those types of questions to us." Id. If the alleged PSP agreement instead required State Farm to determine the value of Plaintiffs' loss exclusively from ServPro's estimates, as Plaintiffs argue, then ServPro would be inherently rendering an opinion on what is covered by the policy, contradicting the explicit language in the PSP letter. Id.

32

There is also no language in the PSP documents promising that Plaintiffs' claims would be handled fully within the PSP program. Instead, the PSP letter confirms Plaintiffs' enrollment and states that the program provides "the opportunity to choose" the independent network service provider assigning an independent contractor "to estimate repairs at your property." Id. Nor do the documents contain language indicating that State Farm and ServPro were to work closely together to handle the services without significant involvement from Plaintiffs. On the contrary, each document separately makes clear that State Farm is not entering into a contract with ServPro to repair the property. See Dkt. No. 115-3 ("State Farm is not exercising its option under the insurance policy to repair or replace damaged property."); Dkt. No. 115-4 ("I also understand they [ServPro] are independent contractors and/or independent service providers hired by me and not by the State Farm Insurance Companies."); Dkt. No. 115-5 ("Customer agrees that Provider [ServPro] is working for the Customer and not Customer's insurance company or any agent/adjuster.").

This being so, Plaintiffs' breach of contract claim based on an integrated contract comprising the three PSP documents fails because the Court cannot reasonably infer Plaintiffs' alleged terms from the clear language contained in the documents—language that instead contradicts Plaintiffs' described terms.

Plaintiffs separately argue that State Farm breached an

implied duty of good faith and fair dealing which exists within all contracts.   Dkt. No. 145 at 19; Dkt. No. 114-1 at 11-23. However, because finding breach of duty of good faith and fair dealing first requires a finding of a breach of a literal term of the contract, Plaintiffs' claim for breach of the duty of good faith and fair dealing also fails. See Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990).

### 2.    **Whether an oral agreement exists**

Next, to the extent Plaintiffs argue that they entered into an oral agreement with State Farm, Plaintiffs have produced insufficient evidence to create a genuine dispute of fact as to the existence of such an agreement.

To support their contention that an oral agreement exists, Plaintiffs point to their own declarations and alleged evidence of State Farm's part performance. See, e.g., Dkt. No. 145 at 13-17; Dkt. No. 155 at 2-6; Dkt. No. 114-1 at 5-8; Dkt. No. 178 at 4-6; Dkt. No. 192 at 2-5. But Plaintiffs' declarations do not support a finding that an oral agreement exists. Plaintiff Josiah Davis's declaration instead demonstrates Mr. Davis's recollection of what Mr. Roney "explained" about the PSP and what Mr. Davis "understood" about the program, dkt. no. 145-2 ¶¶ 20, 25, which does not support an inference of mutual assent to specific terms of an oral contract by State Farm or Plaintiffs. See Mitchell, 635 S.E.2d at 805 (defining "assent of the parties to the terms of the contract" as

34

one of the essential elements to a valid contract). Specifically, Mr. Davis recalled that Mr. Roney explained the parameters of the PSP program as follows:

> [U]nder the PSP Program, all we [the Davises] were required to do was sign the PSP documents, pay our deductible, and approve the final construction to satisfy the tasks required of us to complete all necessary cleaning and restoration of our home, with State Farm and ServPro working together to obtain the permits, approve the estimates, hire the sub-contractors, manage the services, and handle payment of the claim without significant additional involvement on our part.

Dkt. No. 145-2 ¶ 20. To the extent that an explanation of the program could be considered proposed terms, these terms are too vague and indefinite to form an enforceable agreement. For example, other than stating "all necessary" repairs would be made, these terms do not describe the scope of repairs or include any kind of work schedule. See Aukerman v. Witmer, 568 S.E.2d 123, 127 (Ga. Ct. App. 2002) (finding an alleged oral agreement "vague, uncertain, and too indefinite to be enforceable" when the alleged terms did not include expected terms such as the structure of the transaction).

Furthermore, the cited portions of Mr. Davis's declaration show that Mr. Davis understood the agreement to be contained in the three PSP documents, not an oral agreement. Dkt. No. 145-2 ¶¶ 18, 20, 24, 25 (referring to the three documents as the "PSP Agreement" or the "PSP contract" and recalling Mr. Davis's

35

understanding of the terms of the PSP "just like it said in the PSP Agreement"). Indeed, Mr. Davis makes a distinction between the "PSP Agreement" and "Mr. Roney's explanation of the PSP program." Id. ¶ 27.

Likewise, Plaintiff Emily Davis's declaration does not refer to an oral agreement but instead documents how she "understood" the PSP to work, as well as her recollection that the "PSP Agreement" was "signed" by her husband the day after the fire with her understanding mirroring that in her husband's declaration. Dkt. No. 119 ¶¶ 2-3 ("We both understood on March 20, 2023, that all we were required to do was sign the PSP documents, pay our deductible, and approve the final construction to satisfy the tasks required of us to complete necessary cleaning and restoration of our property, with State Farm and ServPro working together to manage the services and handle payment of the claim without significant additional involvement from us."). These vague and indefinite recollections are insufficient to create a dispute of material fact as to the existence of an oral agreement, see Aukerman, 568 S.E.2d at 127, especially when these potential terms are considered in light of the contradictory language in the undisputed PSP documents, described supra. Cf. Henry v. Blankenship, 621 S.E.2d 601, 604 (Ga. Ct. App. 2005) ("A party is entitled to prove the existence of any separate oral agreement as to any matter on which a document is silent, and which *is not*

*inconsistent with its terms*, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them." (emphasis added) (quoting <u>Preferred Risk Mut. Ins. Co. v. Jones</u>, 211 S.E.2d 720, 722 (Ga. 1975))).

Plaintiffs also point to certain actions by State Farm and ServPro that they characterize as part performance of the alleged PSP agreement in the form of Mr. Roney directing ServPro to perform work—or not perform work, in some instances—as well as State Farm's payment of certain invoices prepared by ServPro. <u>See, e.g.</u>, Dkt. No. 145 at 16–17 (citing Dkt. Nos. 115-7, 116); Dkt. No. 114 at 5–8; Dkt. No. 155 at 2–5 (citing Dkt. Nos. 115-7, 115-8, 116-4); Dkt. No. 178 at 4–6 (citing Dkt. Nos. 116-4, 115-7, 116-9, 116-20, 171-1).

To understand the utility of this proposed evidence of partial performance, it helps to look at the enforceability of oral agreements within the exceptions to the Statute of Frauds.[3] In that context, an oral agreement would still be enforceable, even if the statute of frauds required the agreement to be in writing, *if* there

---

[3] Georgia's statute of frauds requires certain contracts to be in writing and signed by the party to be bound, or they are unenforceable. <u>See</u> O.C.G.A. § 13-5-30. "The whole purpose of the statute [of frauds] is to prevent persons from being enmeshed in and harassed by claimed oral promises made in the course of negotiations not ending in contracts reduced to writing as required by these statutes." <u>Cohen v. Pullman Co.</u>, 243 F.2d 725, 729 (5th Cir. 1957).

had been part performance by the party the agreement is sought to be enforced against. See O.C.G.A. § 3-5-31. When a party seeks to enforce such an alleged oral agreement based on partial performance, however, the agreement must be "certain and definite in all essential particulars." Bodiford v. Waltz, 830 S.E.2d 738, 740 (Ga. Ct. App. 2019) (quoting Troutman v. Troutman, 676 S.E.2d 787, 791 (Ga. Ct. App. 2009)). Additionally, the performance must be consistent with the existence of a contract and inconsistent with the lack of a contract. Id. at 740–41 (quoting Payne v. Warren, 639 S.E.2d 528, 530 (Ga. Ct. App. 2006)).

Here, the fact that the alleged terms of the oral agreement were not themselves "certain and definite," as described supra, renders any alleged part performance by State Farm insufficient to create a dispute of material fact as to an alleged oral agreement. Cf. Bodiford, 830 S.E.2d at 740. Moreover, that State Farm's alleged part performance—Mr. Roney's purported direction of ServPro to start the board-up services or stop work and State Farm's payment of invoices prepared by ServPro—is consistent with the existence of a contract also does not create a dispute of material fact as to an alleged oral agreement. The undisputed PSP documents allow State Farm to pay ServPro directly for services performed and only for services covered by the policy. Dkt. No. 115-5 at 1. It would be expected, in the absence of an oral agreement, for ServPro to look to State Farm for direction as to

38

what work is covered by the policy, as the PSP letter informed Plaintiffs that ServPro, as their independent service provider, "was not authorized to answer questions or give opinions on whether damage is covered under the policy." Dkt. No. 115-3 at 1. Therefore, Plaintiffs' purported evidence of State Farm's partial performance does not create a genuine dispute of material fact as to the existence of an oral agreement outside of the PSP documents.

An additional point bears mentioning: in their responsive briefing, Plaintiffs argue that the Court's summary judgment ruling as to an oral agreement under Count III would be *sua sponte*, as State Farm initially moved for summary judgment on Count III on the basis that State Farm was not a party to the Authorization to Perform Services and Direction of Payment signed by Plaintiff Josiah Davis and ServPro. Dkt. No. 192 at 2; Dkt. No. 111-1 at 20–22. Plaintiffs' argument is misplaced. First, the Court may *sua sponte* grant summary judgment "so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted." Burton v. City of Belle Glade, 178 F.3d 1175, 1204 (11th Cir. 1999). Here, Plaintiffs were afforded sufficient notice. The Court inquired as to Plaintiffs' evidence of an oral agreement at the motions hearing on June 8, 2026, and Plaintiffs responded in supplemental briefing after the hearing. Dkt. No. 192 at 2–4. Moreover, any confusion as to what

39

agreement formed the basis of Count III may be attributed to Plaintiffs' vague description of the agreement in their SAC. There, Plaintiffs described the PSP Agreement as the "enrollment letter" and described the other undisputed PSP documents. Dkt. No. 97 ¶¶ 26–33 ("On March 20, 2023, State Farm created a PSP Agreement (enrollment letter) enrolling Plaintiffs' Claim in the PSP Program . . . . "). In the portion of the SAC specific to Count III, Plaintiffs reference a "PSP Agreement" but make no reference to an oral agreement anywhere in the SAC. See id. ¶¶ 108–11. It is true that State Farm did not initially move for summary judgment as to Count III on the basis that there was no oral agreement between the parties. See Dkt. No. 111-1 at 12–13. However, this can be attributed, at least in part, to the shifting manner in which Plaintiffs presented the alleged PSP agreement.

Therefore, as there is no dispute of material fact as to the existence of an enforceable PSP agreement containing the terms Plaintiffs allege, State Farm's motion for partial summary judgment is **GRANTED** as to Plaintiffs' claim for breach of contract outside of the insurance policy (Count III).

### D.   Breach of Legal Duty (Count IV)

State Farm next argues that it is entitled to summary judgment on Count IV, Plaintiffs' claim for breach of a legal duty outside of the insurance contract, because Georgia law does not support a tort claim for improper claims handling. Dkt. No. 111-1 at 22–23.

40

Plaintiffs argue that this alleged legal duty was a fiduciary duty created through Plaintiffs' participation in the PSP because that program allegedly "placed State Farm in the position of holding the Davis's money, namely their insurance proceeds, and paying that money to their contractor, ServPro, to clean and restore their home based on their estimate(s) for that work prepared by ServPro to satisfy their insurance claim." Dkt. No. 114-1 at 23–24; see also Dkt. No. 145 at 22–24.

In Georgia, "[a] fiduciary 'relationship may be created by law, contract, or the facts of a particular case.'" PNC Fin. Servs. Grp., Inc. v. Gibson, 901 S.E.2d 331, 338 (Ga. Ct. App. 2024) (quoting Douglas v. Bigley, 628 S.E.2d 199 (Ga. App. 2006)), reconsideration denied (May 24, 2024), cert. denied (Oct. 15, 2024). Fiduciary relationships are a subset of statutorily defined confidential relationships. King v. King, 888 S.E.2d 166, 169 (Ga. 2023) ("So, while all fiduciary relationships are confidential in nature, only some confidential relationships are fiduciary relationships."). Confidential relationships, in turn, are defined by statute:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners; principal and agent; guardian or conservator and minor or ward; personal representative or temporary

41

administrator and heir, legatee, devisee, or beneficiary; trustee and beneficiary; and similar fiduciary relationships.

O.C.G.A. § 23-2-58. "However, '[t]he mere fact that one reposes trust and confidence in another does not create a confidential relationship.'" Harris v. Fulton-DeKalb Hosp. Auth., 255 F. Supp. 2d 1347, 1375 (N.D. Ga. 2002) (quoting Lewis v. Alderman, 162 S.E.2d 440, 441 (Ga. Ct. App. 1968)), aff'd, 48 F. App'x 742 (11th Cir. 2002). In King, the court noted that "fiduciary relationships are established by Georgia law" and cited several statutes which create fiduciary relationships. 888 S.E.2d at 169. The King court then stated with respect to the scope of those relationships: "While the precise contours of a fiduciary's duty may vary depending on the type of fiduciary relationship and the particular facts of a situation, the guiding principle is that the fiduciary has a duty to act with the utmost good faith." Id. In general, there is no fiduciary relationship between an insured and his insurer. Willis v. Allstate Ins. Co., 740 S.E.2d 413, 417 (Ga. Ct. App. 2013) (citations omitted).

Plaintiffs' participation in the PSP did not create an independent legal duty outside of the contract between State Farm and Plaintiffs. As previously found, supra, Plaintiffs have not submitted sufficient evidence of an enforceable agreement requiring State Farm to pay Plaintiffs' insurance claim to ServPro based on the estimates provided by ServPro rather than estimates

42

prepared by State Farm. Instead, explicit language in the PSP letter states that the service providers under the PSP "are not authorized to answer questions or give opinions on whether damage is covered under your policy." Dkt. No. 115-3 at 1; see also Dkt. No. 115-5 ("Customer authorizes State Farm . . . to pay Provider [ServPro] solely and directly for that portion of the work covered by Customer's insurance policy."); Dkt. No. 115-4 ("I understand State Farm is paying for the repairs to the property damage covered under my policy, subject to the deductible and the policy's terms and conditions, and that State Farm is not exercising its option under the insurance contract to repair or replace any part of the property damaged."). Therefore, the only control that State Farm had over the funds due to Plaintiffs under the policy was paying ServPro directly as authorized in the Authorization to Perform Services. Dkt. No. 115-5. State Farm did not arguably assume a fiduciary duty simply because it was a gatekeeper for Plaintiffs' funds due under the policy. Cf. McConnell v. Dep't of Lab., 814 S.E.2d 790, 801 (Ga. Ct. App. 2018), aff'd, 828 S.E.2d 352 (Ga. 2019) (holding that the plaintiff did not adequately allege the existence of a fiduciary duty between a government agency and a citizen under the theory that the agency was merely a gatekeeper for government benefits).

Thus, State Farm was acting as an insurer, and "Georgia law is clear that improper claims handling is a matter of contract,

not tort." Camacho v. Nationwide Mut. Ins. Co., 13 F. Supp. 3d 1343, 1363 (N.D. Ga. 2014) (citing Tate v. Aetna Cas. & Sur. Co., 253 S.E.2d 775, 776 (Ga. Ct. App. 1979)). Therefore, because there is no genuine dispute of material fact as to whether State Farm owed Plaintiffs a fiduciary duty outside of the insurance contract, State Farm's motion for summary judgment as to Count IV is **GRANTED**.

### E.   Punitive Damages (Count V)

State Farm also moves for summary judgment as to Count V, wherein Plaintiffs seek punitive damages. Dkt. No. 111-1 at 23. Bad faith damages available under O.C.G.A. § 33-4-6 are "the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." Great Sw. Exp. Co. v. Great Am. Ins. Co. of N.Y., 665 S.E.2d 878, 881 (Ga. Ct. App. 2008) (quoting Howell v. S. Heritage Ins. Co., 448 S.E.2d 275, 536 (Ga. Ct. App. 1994)). As Plaintiffs concede, the punitive damages Count "effectively stands or falls" with their claim in Count IV for breach of a legal duty, Plaintiffs' only non-contract substantive claim. Dkt. No. 145 at 24. This is because punitive damages under O.C.G.A. § 51-12-5.1 are not available in breach of contract actions. See Harris v. Distinctive Builders, Inc., 549 S.E.2d 496, 500 (Ga. Ct. App. 2001) ("Punitive damages are not applicable to a claim for breach of contract." (citations omitted)).

Therefore, because there is no genuine dispute of material fact as to whether State Farm breached a legal duty outside of the

44

insurance contract under Count IV, State Farm is entitled to summary judgment as to Plaintiffs' claim for punitive damages. Thus, State Farm's motion for summary judgment as to Count V is **GRANTED.**

## II.  Plaintiffs' Motion for Summary Judgment

The Court now turns to Plaintiffs' motion for partial summary judgment.  Dkt. No. 114.  Plaintiffs move for summary judgment only as to their claims for breach of contract outside the policy (Count III) and breach of a legal duty (Count IV). Id. As discussed supra, the record evidence, even viewed in the light most favorable to Plaintiffs, is insufficient to support these claims, and, therefore, State Farm is entitled to summary judgment as to Counts III and IV.  Accordingly, Plaintiffs' partial motion for summary judgment, dkt. no. 114, is **DENIED.**

CONCLUSION

For the reasons stated above, State Farm's motion for partial summary judgment, dkt. no. 111, is **GRANTED in part and DENIED in part.** The motion is **DENIED** to the extent State Farm moves for summary judgment on the issue of consequential damages related to Count I. The motion is **GRANTED** as to the measurement of damages related to Count I, as well as the whole of Counts II, III, IV and V.  These claims are **DISMISSED with prejudice.**  As a result, State Farm's motion to dismiss Counts III, IV, and V of the second amended complaint, dkt. no. 107, is **DENIED as moot.** Finally,

Plaintiffs' motion for partial summary judgment as to Counts III and IV, dkt. no. 114, is **DENIED.** The parties are **ORDERED** to file their proposed consolidated pretrial order within thirty (30) days of the date of this Order.[4]

SO ORDERED this 3rd day of August, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] The pretrial order deadline has been set, and the pretrial conference and trial will proceed shortly thereafter. As a result, Plaintiffs' motion to expedite, dkt. no. 193, is **DENIED as moot.**